57-

**UNSEALED**

United States District Court
Southern District of Texas
FILED

JUN 0 9 2015

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No. |
| MARTHA LIDIA FLORES | § § | **M- 1 5 - 7 6 3** |
| ARGENTINA CAVAZOS | § | |

## SEALED INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

## THE MEDICARE PROGRAM

1.     The Medicare program (Medicare) is a federally funded health care program designed to provide medical care to individuals over age 65 and individuals with disabilities. Medicare is administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the U.S. Department of Health and Human Services (HHS).   Medicare is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

2.     Medicare is divided into multiple Parts:   Medicare Part A (hospital insurance) and Medicare Part B (medical insurance).   Medicare Part A covers inpatient hospital, inpatient skilled nursing, inpatient hospice, and some home health care services.   Medicare Part B covers physician's services and outpatient beneficiary care, including some home health care services. Among the types of reimbursable medical assistance available to covered persons is Home Health Care.

1

3.     Individuals who qualify for Medicare benefits are commonly referred to as "beneficiaries."  Each beneficiary is given a Medicare identification number, referred to as a Health Insurance Claim Number (HICN).

4.     Home Health companies, pharmacies, physicians, and other health care providers that provide services to Medicare beneficiaries are referred to as "providers."  To participate in Medicare, a provider is required to submit an application in which the provider agrees to comply with all Medicare related laws and regulations.  If Medicare approves a provider's application, Medicare assigns the provider a National Provider Identification (NPI) number.  A health care provider with a Medicare NPI number can file claims with Medicare to obtain reimbursement for medically necessary services rendered to beneficiaries.

Once Medicare approves a provider's application, the provider is supplied with a current copy of the Medicare Part A and Part B Provider Manuals.   In addition, Medicare provides further guidance and updates in the form of bulletins and newsletters which are distributed to health care providers.  The Medicare Provider Manuals, bulletins, and newsletters contain the laws, rules, and regulations pertaining to Medicare-covered services including those rules and regulations regarding the requirements pertaining to providing and billing for home health care.

## HOME HEALTH SERVICES

5.     Homebound status is defined in the Medicare Benefit Policy Manual Chapter 7 Section 30.1.1, which states, "In order for a patient to be eligible to receive covered home health services under both Part A and Part B, the law requires that a physician certify in all cases that the patient be confined to his/her home.   An individual does not have to be bedridden to be considered confined to the home.

2

However, the condition of these patients should be such that there exists a normal inability to leave home and, consequently, leaving home would require a considerable and taxing effort.   Generally speaking, a patient will be considered to be homebound if they have a condition due to an illness or injury that restricts their ability to leave their place of residence except with the aid of supportive devices such as crutches, canes, wheelchairs, and walkers; the use of special transportation; or the assistance of another person; or if leaving home is medically contraindicated.

The Electronic Code of Federal Regulations, Title 42 Subpart B § 424.22 - Requirements for home health services, states in part, Medicare Part A or Part B pays for home health services only if a physician certifies and re-certifies the content specified in paragraphs (a)(1) and (b)(2) of this section, as appropriate.

(a) Certification - (1) Content of certification.   As a condition for payment of home health services under Medicare Part A or Medicare Part B, a physician must certify as follows:

(i) The individual needs or needed intermittent skilled nursing care...-If a patient's underlying condition or complication requires a registered nurse to ensure that essential non-skilled care is achieving its purpose, and necessitates a registered nurse be involved in the development, management, and evaluation of a patient's care plan, the physician will include a brief narrative describing the clinical justification of this need.   If the narrative is part of the certification or re-certification form, then the narrative must be located immediately prior to the physician's signature.

If the narrative exists as an addendum to the certification or re-certification form, in addition to the physician's signature on the certification or re-certification form, the physician must sign immediately following the narrative in the addendum.

(ii) Home health services were required because the individual was confined to the home except when receiving outpatient services.

(iii) A plan for furnishing the services has been established and is periodically reviewed by a physician who is a doctor of medicine, osteopathy, or podiatric medicine, and who is not precluded from performing this function under paragraph (d) of this section. (A doctor of podiatric medicine may perform only plan of treatment functions that are consistent with the functions he or she is authorized to perform under State law.)

Re-certification is required at least every 60 days, preferably at the time the plan is reviewed, and must be signed and dated by the physician who reviews the HHS CMS "Home Health Certification and Plan of Care," also known as Form CMS-485 (hereinafter referred to as a 485 Form).

6.      In the Medicare application, the provider agreed to submit claims that were accurate, complete and truthful, including but not limited to, claims for services that are medically necessary.

4

## THE DEFENDANTS

7.     Defendant MARTHA LIDIA FLORES, was a resident of Hidalgo County, Texas and was employed as a marketer for numerous home health companies within the McAllen Division, including but not limited to Sambritt Home Health, LLC, Ability & Performance Home Health, Care Stat Home Health Services, and St. Anthony's Home Health.

8.     Defendant ARGENTINA CAVAZOS was a resident of Hidalgo County, Texas and was employed as a medical assistant at a doctor's office in Hidalgo County.

## MEDICARE BILLINGS AND PAYMENTS

9.     From on or about May 1, 2010, through on or about December 31, 2014, defendant MARTHA LIDIA FLORES caused others to submit false and fraudulent claims in the approximate aggregate sum of $155,915.32 to Medicare, for home health services which were not authorized by a physician and/or not medically necessary.   As a result of said false and fraudulent claims, Medicare paid the approximate aggregate sum of $170,772.35.

## COUNT ONE
## CONSPIRACY TO COMMIT HEALTH CARE FRAUD

10.     The Grand Jury incorporates by reference paragraphs 1 through 9 as though fully restated and re-alleged herein.

11.     Beginning on or about November 15, 2010, through on or about July 9, 2012, in the McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendants,

**MARTHA LIDIA FLORES**
**and**
**ARGENTINA CAVAZOS**

did conspire and agree together, with each other, and with other persons known and unknown to

the Grand Jury, to knowingly and willfully, in violation of Title 18, United States Code, Section

1347, execute a scheme and artifice to defraud the health care benefit program known as Medicare

or to obtain, by false or fraudulent pretenses, representations, or promises, any of the money and or

property owned by or under the control of said health care benefit programs in connection with the

delivery of or payment for health care benefits, items, and medical services.

All in violation of Title 18, United States Code, Section 1349.

## OBJECT OF CONSPIRACY

12.    The object and purpose of the conspiracy and scheme was to defraud the health

care benefit program known as Medicare, and to obtain by false or fraudulent pretenses,

representations, or promises, any of the money or property owned by, or under the custody or

control of the health care benefit program known as Medicare, in connection with the delivery of,

or payment for, health care benefits, items, or medical services.

## MANNER AND MEANS

13.    In order to execute and carry out their illegal activities, defendants MARTHA

LIDIA FLORES and ARGENTINA CAVAZOS committed, aided and abetted the commission, or

otherwise caused others to commit, one or more of the following acts:

(a)    Defendants caused others to submit claims with Medicare for reimbursement of
home health services that were not authorized by a physician and/or were not
medically necessary.  The defendants caused others to file the claims with
Medicare knowing that said claims were false and fraudulent as the patients or
Medicare beneficiaries did not need or qualify for home health services and the
home health services had not been authorized as required by a physician.

6

(b)     Defendant MARTHA LIDIA FLORES issued illegal kickback checks to Defendant ARGENTINA CAVAZOS in exchange for referrals of Medicare beneficiaries, whose information was used by home health companies to bill Medicare for health care items and/or services.  Defendant FLORES issued 11 checks totaling $3,050.00 from her personal accounts to Defendant CAVAZOS. The payments were in increments of $125, $150, or $200 per Medicare beneficiary.

(c)     Specifically, Defendant ARGENTINA CAVAZOS used her position as a medical assistant at a physician's office to gain access to patient names and Medicare numbers.  Defendant ARGENTINA CAVAZOS would then sell the patient names and Medicare numbers to Defendant MARTHA LIDIA FLORES, who would use the information to create false or fraudulent referral forms and/or 485 forms to submit to the numerous home health companies where she was employed.

(d)     Additionally, it was reasonably foreseeable that the home health companies would rely on the authenticity and veracity of the 485 home health referral forms, turned in by Defendant MARTHA LIDIA FLORES and based on an illegal kickback scheme between Defendant MARTHA LIDIA FLORES and Defendant ARGENTINA CAVAZOS, in submitting claims with Medicare.

(e)     During and in relation to their fraudulent conduct and to further their scheme and artifice to defraud Medicare, Defendants MARTHA LIDIA FLORES and ARGENTINA CAVAZOS knowingly transferred possessed, or used, or knowingly caused others to transfer, possess, or use, without lawful authority, one of more means of identification, specifically the names and physician identification numbers of physicians and the names and Medicare identification numbers of Medicare beneficiaries, to execute their scheme and artifice to commit health care fraud.

(f)     Defendant MARTHA LIDIA FLORES forged and/or caused others to forge the signatures of physicians on the referral forms and/or 485 forms, knowing that the physicians did not authorize the need for home health services and/or the beneficiaries did not need or qualify for home health services.  FLORES was illegally compensated for the patient referrals.  Additionally, it was a reasonably foreseeable consequence that the home health companies would rely on the veracity of the home health referral forms conveyed to them by Defendant MARTHA LIDIA FLORES in submitting claims with Medicare.

## ACTS IN FURTHERANCE OF CONSPIRACY

14.     See Counts Two through Four (paragraphs 16 and 18) below.

7

## COUNT TWO
## ILLEGAL REMUNERATIONS

15.     The Grand Jury incorporates by reference paragraphs 1 through 9 and paragraph 13 as though fully restated and re-alleged herein.

16.     On or about December 30, 2011, in the McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendants,

### MARTHA LIDIA FLORES
### and
### ARGENTINA CAVAZOS

aiding and abetting one another, did knowingly and willfully solicit and receive remuneration, including a kickback, bribe, and rebate, directly and indirectly, overtly or covertly, in cash and in kind, from one another, in the form of a $300 kickback check, in exchange for the referral of Medicare beneficiaries for the furnishing and the arranging of the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program.

In violation of Title 42, United States Code, Section 1320a-7(b)(b)(1)(A) and Title 18 United States Code, Section 2.

## COUNTS THREE THROUGH FOUR
## AGGRAVATED IDENTITY THEFT

17.     The Grand Jury incorporates by reference paragraphs 1 through 9 and paragraph 13 as though fully restated and re-alleged herein.

18.     Beginning on or about November 15, 2010, through on or about July 9, 2012, in the McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendants,

**MARTHA LIDIA FLORES**
**and**
**ARGENTINA CAVAZOS**

during and in relation to a felony violation of Title 18, United States Code, Section 1347, Health

Care Fraud, aided and abetted by others, did knowingly transfer, possess, and use, without lawful

authority, a means of identification of another person, including but not limited to the following:

| Count | Patient | Home Health Agency | Reason Use of Identification Was Fraudulent | Means of Identification Used Without Lawful Authority |
|-------|---------|--------------------|--------------------------------------------|-------------------------------------------------------|
| 3 | C.E. | Care Stat Home Health | Home health services were not ordered by a physician; the beneficiary was not approved for home health services.   The physician's signature was forged on CMS 485 form. | Physician's identification number and/or patient Medicare number |
| 4 | J.E. | Care Stat Home Health | Home health services were not ordered by a physician; the beneficiary was not approved for home health services.   The physician's signature was forged on CMS 485 form. | Physician's identification number and/or patient Medicare number |

All in violation of Title 18, United States Code, Section 1028A and Section 2.

**COUNTS FIVE THROUGH THIRTEEN**
**HEALTH CARE FRAUD**

19.     The Grand Jury incorporates by reference paragraphs 1 through 9 and paragraph 13

as though fully restated and re-alleged herein.

20.     Beginning on or about May 1, 2010, through on or about December 31, 2014, in the

McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the

Court, the exact dates being unknown to the Grand Jury, defendant,

## MARTHA LIDIA FLORES

aided and abetted by others, did knowingly and willfully execute or attempt to execute a scheme or artifice to defraud the health care benefit program known as Medicare, or to obtain by false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of the health care benefit program known as Medicare, in connection with the delivery of, or payment for, health care benefits, items, or services.   Defendant submitted, aided, abetted, counseled, commanded, induced, procured or otherwise facilitated or caused each other and others to submit false and fraudulent claims to Medicare, for medical benefits, items, and services which were not provided, including, but not limited to the following:

| Count | Patient | Home Health Agency | Dates of Certification Period (On or about) | Date Billed (On or about) | Amount Billed | Reason Claim Was False and Fraudulent |
|---|---|---|---|---|---|---|
| 5 | P.A. | St. Anthony's Home Health | 12/29/11 – 2/26/12 | 3/30/12 | $1050.00 | Home health services were not ordered by a physician; the beneficiary was not approved for home health services.   The physician's signature was forged on referral and 485 forms. |
| 6 | F.A. | St. Anthony's Home Health | 12/29/11 – 2/26/12 | 5/17/12 | $1050.00 | Home health services were not ordered by a physician; the beneficiary was not approved for home health services.   The physician's signature was forged on referral and 485 forms. |
| 7 | M.R. | St. Anthony's Home Health | 12/10/11 – 2/7/12 | 6/7/12 | $1200.00 | Home health services were not ordered by a physician; the beneficiary was not approved for home health services.   The physician's signature was forged on referral and 485 forms. |

| Count | Patient | Home Health Agency | Dates of Certification Period (On or about) | Date Billed (On or about) | Amount Billed | Reason Claim Was False and Fraudulent |
|---|---|---|---|---|---|---|
| 8 | O.N. | St. Anthony's Home Health | 1/10/12 – 3/9/12 | 8/8/12 | $1350.00 | Home health services were not ordered by a physician; the beneficiary was not approved for home health services.   The physician's signature was forged on referral and 485 forms. |
| 9 | J.P. | Sambritt LLC | 4/14/11 – 6/12/11 | 8/10/11 | $5700.00 | Home health services were not ordered by a physician; the beneficiary was not approved for home health services. |
| 10 | G.R. | Sambritt LLC | 5/7/11 – 7/5/11 | 8/29/11 | $1500.00 | Home health services were not ordered by a physician; the beneficiary was not approved for home health services.   The physician's signature was forged on multiple 485 forms. |
| 11 | M.B. | Sambritt LLC | 2/1/11 – 4/1/11 | 9/22/11 | $1350.00 | Home health services were not ordered by a physician; the beneficiary was not approved for home health services.   The physician's signature was forged on 485 form. |
| 12 | V.F. | Sambritt LLC | 8/25/11 – 10/23/11 | 4/9/12 | $1050.00 | Home health services were not ordered by a physician; the beneficiary was not approved for home health services.   The physician's signature was forged on referral and 485 forms. |
| 13 | L.C. | Sambritt LLC | 3/29/12 – 5/23/12 | 5/30/12 | $1214.37 | Home health services were not ordered by a physician; the beneficiary was not approved for home health services.   The physician's signature was forged on referral and 485 forms. |

All in violation of Title 18, United States Code, Section 1347.

## COUNT FOURTEEN
## AGGRAVATED IDENTITY THEFT

21.    The Grand Jury incorporates by reference paragraphs 1 through 9 and paragraph 13 as though fully restated and re-alleged herein.

22.    Beginning on or about May 1, 2010, through on or about December 31, 2014, in the McAllen Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the exact dates being unknown to the Grand Jury, defendant,

### MARTHA LIDIA FLORES

during and in relation to a felony violation of Title 18, United States Code, Section 1347, Health Care Fraud, aided and abetted by others, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, including but not limited to the following:

| Count | Patient | Dates of Certification Period (On or about) | Date Billed (On or about) | Amount Billed | Reason Claim Was False and Fraudulent | Means of Identification Used Without Lawful Authority |
|---|---|---|---|---|---|---|
| 14 | J.P. | 4/14/11 – 6/12/11 | 8/10/11 | $5700.00 | See Count 9 | Physician's identification number and/or patient Medicare number |

All in violation of Title 18, United States Code, Section 1028A and Section 2.

A TRUE BILL

FOREPERSON                                      ——————•——

KENNETH MAGIDSON
UNITED STATES ATTORNEY

ASSISTANT UNITED STATES ATTORNEY

12